(No. 29425.—

THE PEOPLE *ex rel.* J. Albert Woll, United States Attorney, Petitioner, *vs.* JOSEPH A. GRABER, Judge, Respondent.

*Opinion filed September 18, 1946.*

J. ALBERT WOLL, United States Attorney, (JOHN PETER LULINSKI, of counsel,) both of Chicago, for petitioner.

FISCHER & BOSGRAF, (KELLAM FOSTER, of counsel,) both of Chicago, for respondent.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is an original proceeding in *mandamus*. Petitioner, J. Albert Woll, United States Attorney for the Northern District of Illinois, seeks the writ to compel respondent, as judge of the superior court of Cook county, to expunge from the records of that court, as void for want of jurisdiction to enter it, an order entered by him as such judge on May 9, 1945, in the case pending before him of Walter H. Scott, doing business as Walter H. Scott Engineering Service, plaintiff, v. James I. Silvers, Howard Clock Corporation, an Illinois corporation, and Francis R. Johlie, defendants, No. 44-S-13843, by which order respondent directed petitioner to withdraw his appearance on behalf of the defendant Francis R. Johlie, in said cause. The respondent filed an answer to the petition and the petitioner a reply thereto, which we have treated as a demurrer. The issues were thus closed and the cause was submitted upon the pleadings, and the printed briefs and oral argu-

ment of the parties. There are no controverted questions of fact. The sole question presented is the legal question whether the Attorney General of the United States has an unqualified right, as a matter of law, to appear in said case No. 44-S-13843 in the superior court on behalf of the defendant Francis R. Johlie.

The facts are as follows: On September 18, 1941, Scott, the plaintiff in the superior court case, entered into a contract with the Navy Department of the United States for the delivery of Mark IX tracer bodies, and on January 31, 1942, a further contract was entered into between them, supplementing the contract of September 18, 1941. Under the terms of these contracts, plaintiff was to deliver to the Navy Department 770,000 tracer bodies manufactured in compliance with the specifications set out in the contract and which were to be subject to the inspection and approval of the Navy Department before acceptance; delivery to be made at the rate of 8000 tracer bodies per week, commencing August 28, 1942. The Navy Department, on March 4, 1943, served notice upon plaintiff of cancellation and termination of the contract because of plaintiff's noncompliance with the terms thereof. The defendant Francis R. Johlie was, during all the time mentioned, an officer and agent of the United States, being the Chief Civilian Naval Inspector in the Ninth Naval District, in general charge of inspection of ordnance material manufactured or produced by war contractors in said district, and as such inspector was assigned by the United States government to inspect and pass upon the material produced by plaintiff pursuant to his contract with the Navy Department. Johlie was not, however, at the time when the complaint was filed in the superior court, nor has he been at any time since, an officer, agent or employee of the United States.

The case No. 44-S-13843 in the superior court of Cook county was an action at law, filed September 28, 1944,

seeking recovery in favor of the plaintiff Scott for damages arising out of an alleged conspiracy by and between the defendants to cause the contract between plaintiff and the Navy Department to be terminated and forfeited. The amended complaint was filed March 31, 1945, and contained two counts. The first count made no reference to and contained no charges against Johlie. It asked judgment only against the Howard Clock Corporation. The second count prayed judgment against all the defendants. It charged a conspiracy between Johlie and the other defendants to cause plaintiff's contract with the Navy to be terminated and forfeited, and that in pursuance of the conspiracy, Johlie wilfully and maliciously rejected and refused to approve and accept tracer bodies delivered by plaintiff, although the same complied with the specifications of the contract between plaintiff and the United States Navy. The count alleged that by virtue of said conspiracy and the acts and doings of Johlie and the other defendants, in pursuance thereof, plaintiff's contract with the Navy Department was cancelled and terminated, whereby plaintiff claimed to have sustained damage in the sum of $83,217.72, for which amount he asked judgment.

November 30, 1944, the petitioner, Woll, acting at the request and upon the instructions of the Attorney General of the United States, entered his appearance as the United States Attorney for the Northern District of Illinois, on behalf of the defendant Johlie, in the superior court, and also filed in the cause a motion to dismiss the complaint. Thereupon the plaintiff Scott filed a petition in the cause praying for a rule upon the District Attorney, requiring him to withdraw his appearance as attorney for Johlie. This petition of the plaintiff Scott stated that, in his belief, the proof would show that Johlie had committed at least two distinct crimes against the laws of the United States of America in connection with the transactions described in the complaint, and further alleged that none of the acts

or doings of Johlie complained of were committed by him in the performance of any duty as an employee of the United States. To this petition an answer was filed by the United States Attorney, alleging the court had no jurisdiction to order his withdrawal as such attorney, for the reason that he had been directed by the Attorney General of the United States to appear as attorney for Johlie, and under the constitution and laws of the United States exclusive discretion was vested in the Attorney General to determine whether Woll, as United States Attorney, should appear in the proceedings on behalf of the defendant Johlie. After a hearing upon the petition and answer, the order herein sought to be expunged was entered, finding that the alleged acts and doings of Johlie complained of were committed by him in his individual capacity and not in the performance of his duties as an employee of the United States, and that the United States had no interest which would be affected by or jeopardized in the pending suit, and directing the United States Attorney, Woll, to withdraw his appearance as attorney for the defendant Francis R. Johlie.

The Attorney General of the United States is its chief law officer. He is the head of the Department of Justice (5 U.S.C.A. 291,) and all the functions of that department are to be exercised under his supervision and direction. The Department of Justice is one of the great executive departments established by congressional enactment and has charge, among other things, of the assertion and protection of the interests of the United States, when it or its officers are sued by others. (*McGrain* v. *Daugherty,* 273 U. S. 135, 47 S. Ct. 319.) It is true that Congress had made no specific statement enumerating the general duties of the Attorney General, but it is seen from the entire chapter of the United States statutes which establishes and regulates the Department of Justice and from the various provisions of the Judicial Code that he has the

authority and it is made his duty to have general control and supervision of all criminal prosecutions and also of all civil suits in which the United States is interested, whether such interest be the subject of attack or defense; and that he is at liberty to call upon the District Attorney in any district, as the official representative of the United States, to appear and protect and defend the interests of the government in any civil suit in which its interests are . involved or might be jeopardized.

Respondent does not dispute the right and duty of the Attorney General or that of the District Attorney, at the direction of the Attorney General, to appear and participate in any civil suit between private parties wherein the interests of the United States are involved, but he contends that it is the province of the court in which the action is pending to determine whether or not the interests of the United States are involved. He further contends that it is apparent from the pleadings in the case in his court that the United States had no interest which can be affected or jeopardized by the pending litigation and that the alleged wrongful acts of the defendant Francis R. Johlie, if committed, were committed by him in his individual capacity and not in the performance of his duties as an employee of the United States; that respondent had jurisdiction to enter the order in question, prohibiting the United States Attorney from appearing in the case on behalf of the defendant Johlie; and that any review of such order must be by appeal and cannot be by way of *mandamus*.

The writ of *mandamus* is not a writ of right. The exercise of our original jurisdiction in granting the writ is discretionary with this court. The existence of another and adequate remedy, while no bar to the relief, (*People ex rel. Waber* v. *Wells,* 255 Ill. 450,) may be of importance in determining whether we will assume jurisdiction in a particular case, and, in the exercise of the discretion vested in this court, might be considered as constituting

good grounds for refusal to act. An order striking the name of an attorney and expelling him from appearing as counsel for a party litigant is not a final order from which an appeal may be taken. (*People ex rel. School District* v. *Holland,* 384 Ill. 277; *Almon* v. *American Carloading Corp.* 380 Ill. 524.) Neither the litigant, the attorney, nor the interests which the litigant or attorney represents can appeal from such order. Nor is there any adequate remedy available to them other than the writ of *mandamus* from this court.

The general power of this court to issue a writ of *mandamus* to an inferior court to expunge from its records an order, judgment or decree which is void because entered without jurisdiction is settled by a long line of decisions. (*People ex rel. Benefit Association of Railway Employees* v. *Miner,* 387 Ill. 393; *People ex rel. Courtney* v. *Prystalski,* 358 Ill. 198.) The sole question, therefore, in this case is the existence or nonexistence of jurisdiction in the respondent Graber to enter the order complained of, and this, in turn, depends wholly upon whether the determination by the Attorney General, that the protection or furtherance of the interests of the United States required the appearance of petitioner, as United States Attorney, on behalf of defendant Johlie in the superior court, is binding on that court, or is subject to the review and control of said court.

Petitioner, in support of his contention that his right to appear in the superior court case, upon instruction from the Attorney General of the United States, is an absolute right, not subject to review or control by respondent, relies upon section 316 of title 5 of the United States Code, and contends that respondent, as judge of the superior court of Cook county, is bound thereby. The laws of the United States are laws in the several States, and just as binding on the citizens and courts thereof as the State laws are. The United States is not a foreign sovereignty as regards

the several States but is a concurrent, and, within its jurisdiction, a paramount authority. United States Constitution, Art. VI; *Claflin* v. *Houseman,* 93 U. S. 130.

The above-cited section of the Federal statute is as follows: "Sec. 316. *Interest of United States in pending suits.* The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State, or district in the United States to attend to the interests of the United States in any suit pending in any of the courts of the United States, or in the courts of any State, or to attend to any other interest of the United States."

While the Attorney General may not maintain an action solely for the vindication of private rights or the redress of private grievances in which the public has no interest and may not appear in any litigation upon behalf of a defendant except for the interests of the United States, we think it must be conceded that the above section authorizes the Attorney General to direct the appearance of a United States Attorney in any civil suit between private persons in which the interests of the United States are involved and vests the Attorney General with discretionary power to determine when the interests of the United States are actually involved in the litigation and require attention and protection. Neither the cited section nor any other provision in the Federal statutes prescribes rules to govern his action or interferes with his discretion in determining whether the interests of the United States are involved in a civil suit between private parties, and, if so, the necessity or propriety of the appearance therein of a United States Attorney.

The general doctrine is well established that an officer to whom public duties are confided by law is not subject to the control of the courts in the exercise of the judgment and discretion which the law gives to him as a part of his official functions; the reason for this being that the law reposes this discretion in him for that occasion and not in

the courts. (43 Am. Jur. 72, sec. 255; *Gaines* v. *Thompson,* 7 Wall, 347, 74 U. S. 62.) Where a statute gives a discretionary power to an officer, upon his own opinion of certain facts, it is a sound rule of construction that he is the sole and exclusive judge of the existence of those facts. (43 Am. Jur. 72, sec. 255; *United States* v. *Bush,* 310 U. S. 371, 60 S. Ct. 944.) The courts are careful of encroaching upon the discretionary power of a public officer, and if reasonable doubt exists as to the question of discretion or want of it, the courts will hesitate to interfere, preferring rather to extend the benefit of the doubt in favor of the officer. (*Investors Syndicate of America, Inc.* v. *Hughes,* 378 Ill. 413.) The courts do not sit in judgment upon questions of administrative discretion. A court cannot substitute its discretion for that of executive officers in matters belonging to the proper jurisdiction of the officers. (*Board of Liquidation* v. *McComb,* 92 U. S. 531.) It cannot, under the guise of exerting judicial power, assume to exercise the discretion which the people, acting through their representatives in Congress, have lodged in administrative officers and agents. The powers of government, both National and State, are divided into three department—legislative, executive and judicial. Neither of these departments is subordinate to or can assume overlordship of either of the others. The domain of the judiciary is in the field of the administration of justice under the law. It interprets, construes and applies the law, but it does not interfere with the conduct of government by entering into a field of conflict for the control of executive discretion by judicial action. It does not intermeddle with the execution of discretionary powers vested in executive or administrative officers, in the absence of abuse or arbitrary or capricious exercise of such power on the part of the officers. No complaint is made in this court and none was made in the superior court that the Attorney General had failed to fairly and honestly exercise his best judgment or that

he wilfully or fraudulently abused his discretion in directing the petitioner herein to appear in the superior court on behalf of the defendant Johlie. The opposition to petitioner's appearance on behalf of Johlie and to the order expelling him from the case is based on the theory that the interests of the United States are not involved in the litigation.

Respondent alleges in his answer filed in this court, and in the order entered by him in the superior court, judicially found, that the alleged wrongful acts of the defendant Johlie were committed by him, if committed at all, in his individual capacity and not in the performance of his duties as an employee of the United States, and that the complaint so charged; and respondent in said order further judicially found that no interest of the United States was affected by or jeopardized in the pending cause. Both the original and the amended complaint in the superior court case plainly disclose that the defendant Johlie was sued for damages on account of acts performed by him in his official capacity as an officer and agent of the United States, *viz.,* as a civilian naval inspector of the United States, and that the wrongful acts charged against him consisted of his alleged wilful and malicious rejection on behalf of the United States, and his alleged wilful and malicious refusal to approve and accept on behalf of the United States, certain tracer bodies produced by the plaintiff Scott, under his contract with the Navy Department of the United States, and that during the period of time Johlie so rejected and refused to approve and accept said tracer bodies on behalf of the United States he was a civilian naval inspector and, as such, assigned by the United States government to inspect and pass upon the tracer bodies produced by plaintiff under his said contract with the Navy. It is idle to claim that there is nothing in the amended complaint to show that the alleged wrongful acts of Johlie complained of were committed by him in the per-

formance of his duties as an employee of the United States. Manifestly, there can be no dispute that it alleges that the defendant Johlie was a civilian inspector of and for the United States; that he was assigned by the United States, as such inspector, to inspect and pass upon the tracer bodies produced by the plaintiff for the United States Navy, and that what Johlie did in rejecting and refusing to accept said tracer bodies he did on behalf of the United States while acting for it as a civilian inspector. It is too narrow a view of the case to say that Johlie's conduct in rejecting and refusing to accept the tracer bodies cannot be said to be his official conduct because it is alleged to have been wilful and malicious. Official acts in the performance of the duties of an office do not mean simply the lawful acts of the officer holding that office, but include all acts done in his official capacity, under color and by virtue of that office. (*Greenberg* v. *People*, 225 Ill. 174; *Campbell* v. *People*, 154 Ill. 595; Ballentine's Law Dictionary, p. 901.) Except that the plaintiff Scott has not in so many words alleged that the defendant Johlie acted in the line of his duty as an officer and agent of the United States, everything in both the original and the amended complaint shows that he did so. The pleadings will bear no other construction. The allegations that the defendant Johlie, in pursuance of a conspiracy to cause plaintiff's contract with the United States Navy to be terminated and forfeited, wilfully and maliciously rejected and refused to approve and accept tracer bodies produced by plaintiff under said contract, and that as a direct result thereof plaintiff was prevented from maintaining his delivery schedule under the terms of his contract and said contract was cancelled and terminated by the Navy Department, are inconsistent with any other interpretation; for, while Johlie, as a mere private individual, might conspire to cause plaintiff's contract with the Navy Department to be terminated and cancelled, he could not, in that capacity, pass upon and reject or re-

fuse to approve and accept the tracer bodies produced by plaintiff for the use of the United States Navy. It was within the scope of the authority of the defendant Johlie, as an officer and agent of the United States assigned by the United States government to inspect and pass upon the work performed by the plaintiff pursuant to his contract with the Navy, to reject and to refuse to approve and accept said tracer bodies. We do not understand that there is any dispute about this matter. If, as respondent asserts, the complaint charges that all that was done by Johlie was done by him in his private capacity and not in the discharge of his duty as an officer and agent of the United States, it is not clear to us how plaintiff is in any position to maintain an action against Johlie for damages, for if the complaint means that Johlie acted merely as a private individual, and not in behalf of the government, and that his inspection of the tracer bodies was not authorized or recognized by the government, then his rejection or failure to approve and accept said tracer bodies certainly could not be presumed to have been the cause of any action taken by the government or by the United States Navy, and no semblance of a cause of action for damages would be stated against Johlie. However, Johlie was not sued, as respondent contends, on account of wrongful acts committed by him in his individual capacity, but on the contrary, as the complaint discloses, he was sued for acts committed by him in the line of his duty and within the scope of his authority as an officer and agent of the United States.

We do not think it can be claimed that Johlie in inspecting the tracer bodies produced by the plaintiff for the use of the United States Navy, then engaged in war, and in passing upon the question of their conformance to the requisite Navy specifications, was not performing a public service of the greatest importance and interest to the United States. A fearless performance of such duties, without

favor, discrimination or prejudice, by the officials charged therewith, concerns the welfare and security of the nation. The protection and defense of such officers in their legitimate acts in the faithful performance of their public duties is a matter of vital interest to the government which they represent. The fact that an officer, when his official action in the proper performance of his duties is called in question in a suit for damages by a dissatisfied individual, is allowed the protection and representation of the Attorney General would naturally tend to secure a fearless performance of official duty and thereby promote the efficiency of the government.

The court, in a case such as the one wherein Johlie was sued, cannot know until all the evidence has been heard whether the action of the officer was committed in the faithful performance of his duty, and therefore cannot judicially determine until that time whether the interests of the United States are involved. To hold that the court has the power, upon the unproved allegations of the complaint, to determine that the interests of the United States are not involved and to order the withdrawal of the Attorney General from the case, would authorize the court to prejudge the case and would destroy the discretionary power vested by Congress in the Attorney General to determine such question. "If the right of the Attorney General to act rests upon a judicial determination of the court where the suit is pending that the asserted unlawful, illegal, or unauthorized acts were lawful and within the authority and in the discharge of official duty, then the discretion of the Attorney General could be exercised only at a time when the occasion for its exercise had passed." (*Booth* v. *Fletcher*, 101 Fed. 2d 676, *certiorari* denied 307 U. S. 628, 59 S. Ct. 835.) The mere fact that a defendant is charged with a wilful and malicious act in connection with the performance of his official duty as an officer or agent of the United States is not sufficient to warrant the court in auto-

matically assuming that he is guilty of such charge, and therefore the United States has no interest or concern in his protection and defense.

Respondent argues that if the discretionary power given by Congress to the Attorney General to intervene in litigation in a State court cannot be controlled by the court in which the litigation is pending, such uncontrolled power in the Attorney General would logically result in the complete destruction of State rights and make the State courts mere creatures of the Federal government by enabling the Attorney General of the United States to interfere in all private litigation on the most frivolous pretexts. It is illogical to argue, from the abuse of power, a negative of it, or that, because the power might be subject to abuse, it cannot exist. Every power, however indispensable, may be abused. The official appearance of the Attorney General in a civil suit in a State court, where the alleged infringement upon the rights of an individual by a Federal officer in violation of his duty is the subject of controversy, does not to any extent encroach upon or destroy the jurisdiction of the State court and does not in anywise affect the substantive and procedural rights of the plaintiff therein to have the cause tried and controlled by the substantive and procedural law of the State.

It is clear that respondent was without jurisdiction to enter the order directing petitioner to withdraw his appearance entered in cause No. 44-S-13843, in the superior court of Cook county, on behalf of the defendant Johlie. The writ of *mandamus* is therefore awarded commanding the respondent, as judge of said court, to expunge from the records of that court the void order.

*Writ awarded.*